IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NUMERIC ANALYTICS, LLC | : | |
| Plaintiff | : | |
| v. | : | Civil Action No.: 2:16-cv-00051-GAM |
| ANN MCCABE, KURT SCHRON, ROBERT SAUNDERS, BERNADETTE SANCHEZ, AND ELIZA CLEMENT | : | |
| Defendants | : | |

## DECLARATION OF DAVID CARPENTER

I, David Carpenter, make the following Declaration of my own free will and without duress, and based upon my personal knowledge.

1. I am a Manager of Numeric Analytics, LLC ("Numeric Analytics" or the "Company").

2. As a Manager of Numeric Analytics, I am familiar with the contacts between the Company and the individual defendants to this action.

### Defendant Ann McCabe

3. Defendant McCabe was employed for two years and nine months by Numeric Analytics, a Pennsylvania-based company.

4. In November 2013, Defendant McCabe accepted the position of President of Numeric Analytics, a Pennsylvania-based company. She served in that role for one year and seven months. As President of a Pennsylvania-based company, she was a fiduciary officer, and

therefore I believe she understood (or should have understood) that she could be required to defend claims in Pennsylvania.

5.      Defendant McCabe executed a Confidentiality and Non-Solicitation Agreement with the Company, with a clause that provides for Pennsylvania law to govern. The Agreement was sent to Defendant McCabe by email from Pennsylvania, and after signing it she returned it by email to Pennsylvania. Had she not agreed to that provision, she would not have been hired.

6.      Defendant McCabe also signed the following additional agreements: (1) on information and belief, an offer letter sent to her from Pennsylvania, listing the Chadds Ford address as the company's address, and (2) an acknowledgement of the employee handbook (accompanied by the handbook itself). Defendant McCabe received these agreements from Pennsylvania, signed them, and sent her signature pages back to Pennsylvania.

7.      In the course of her tenure as President, Defendant McCabe communicated with the Chadds Ford headquarters very frequently, on average daily. A cursory count conducted today shows at least 400 email threads initiated by Defendant McCabe into Pennsylvania. Email communications with Chadds Ford personnel traveled from her numericanalytics.com account to the Numeric Analytics server, which is located in Pennsylvania, thus such emails constitute reaching into Pennsylvania. Telephone contacts also reached into Pennsylvania, particularly the numerous instances when Ms. McCabe would telephone Sean Chen or other personnel in Chadds Ford by calling the Chadds Ford office's Pennsylvania telephone number. Ms. McCabe also participated in regular conference calls with the rest of management, who were located in Chadds Ford.

8.      In the course of her daily work, Defendant McCabe relied heavily on email communications as is common for modern workers in the IT industry. Ms. McCabe used the

following email account: ann.mccabe@numericanalytics.com. This account is administered and controlled by Numeric Analytics from Chadds Ford in conjunction with its outside IT consultant, Keystone Information Technology, based and operating in Berwyn, Pennsylvania.

9. Defendant McCabe was paid by direct deposit from Numeric Analytics's bank account, first from Meridian Bank in Paoli, Pennsylvania, and then after March 2014 from PNC Bank in Chadds Ford, Pennsylvania.

10. Defendant McCabe traveled to Pennsylvania to visit the Chadds Ford office on May 5, 2015, for the purpose of meeting with the rest of the management team. Numeric Analytics paid her travel expenses.

11. Defendant McCabe routinely relied upon the Chadds Ford headquarters and other Pennsylvania contacts for her administrative, human resources, and payroll/benefits support. This included, without limitation:

- All general office support matters;
- All salary/payroll matters;
- Hiring of additional Company personnel: Chadds Ford handled the hiring of additional Company personnel, and personnel were hired upon request by Defendant McCabe as the Company's President (after approval by the Company's managers in Chadds Ford);
- Health insurance, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Vision benefits, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Dental benefits, organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- 401(k) Plan, organized by the Chadds Ford headquarters, and provided by Cornerstone Advisors in Allentown, Pennsylvania;

- Life insurance, long-term disability, and accidental death coverage, all organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Technical allowance (annual), cell phone/internet allowances, and gym benefits, all organized and paid out of the Chadds Ford headquarters.

12. Defendant McCabe obtained regular IT support from the Chadds Ford office, which either provided such support directly or through its outside IT consultants, Keystone Information Technology, based and operating out of Berwyn, Pennsylvania.

13. Defendant McCabe received the protections of Pennsylvania law. When hired, she received the Company's employee handbook, delivered from Pennsylvania, and she returned a signed acknowledgement to Pennsylvania. My understanding, and the Company's intention, is (and always was) that any legal protections arising from the handbook are governed by Pennsylvania law.

**Defendant Kurt Schron**

14. Defendant Schron was employed by Numeric Analytics, a Pennsylvania-based company.

15. I recruited Defendant Schron. The recruitment efforts consisted of emails, including emails by Mr. Schron into Pennsylvania, and telephone calls with me in Pennsylvania. All of the Company's recruitment efforts were undertaken from Pennsylvania.

16. Defendant Schron executed a Confidentiality and Non-Solicitation Agreement with the Company, with a clause that provides for Pennsylvania law to govern. The Agreement was sent to Defendant Schron by email from Pennsylvania, and after signing it he returned it by email to Pennsylvania. Had he not agreed to that provision, he would not have been hired.

17. Defendant Schron also signed the following additional agreements: (1) an offer letter sent to him from Pennsylvania, listing the Chadds Ford address as the company's address, and (2) an acknowledgement of the employee handbook (accompanied by the handbook itself). Defendant Schron received these agreements from Pennsylvania, signed them, and sent his signature pages back to Pennsylvania.

18. In the course of his employment, Defendant Schron was a timekeeping employee for billing purposes. His time entries were entered remotely from his home, approximately each day, into a time keeping portal administered by Numeric Analytics in Chadds Ford. There, in Chadds Ford, his time was aggregated and billed to clients. The payments for his work matriculated to Numeric Analytics's account at PNC in Chadds Ford (at certain times payments would travel through Utah, per the terms of a line of credit held by the Company).

19. In the course of his daily work, Defendant Schron relied heavily on email communications as is common for modern workers in the IT industry. Mr. Schron used the

following email account: kurt.schron@numericanalytics.com. This account is administered and controlled by Numeric Analytics from Chadds Ford in conjunction with its outside IT consultant, Keystone Information Technology, based and operating in Berwyn, Pennsylvania.

20. Mr. Schron communicated with the Chadds Ford headquarters on average several times per month. Email communications with Chadds Ford personnel traveled from his numericanalytics.com account to the Numeric Analytics server, which is located in Pennsylvania, thus such emails constitute reaching into Pennsylvania. Telephone contacts by Mr. Schron also reached into Pennsylvania, as they were direct calls to the headquarters.

21. Defendant Schron was paid by direct deposit from Numeric Analytics's bank account at PNC Bank in Chadds Ford, Pennsylvania.

22. Defendant Schron relied upon the Chadds Ford headquarters and other Pennsylvania contacts for his administrative, human resources, and payroll/benefits support. This included, without limitation:

- All general office support matters;
- All salary/payroll matters;
- Health insurance, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;
- Vision benefits, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Dental benefits, organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- 401(k) Plan, organized by the Chadds Ford headquarters, and provided by Cornerstone Advisors in Allentown, Pennsylvania;

- Life insurance, long-term disability, and accidental death coverage, all organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Technical allowance (annual), cell phone/internet allowances, and gym benefits, all organized and paid out of the Chadds Ford headquarters.

23. Defendant Schron received the protections of Pennsylvania law. When hired, he received the Company's employee handbook from Pennsylvania and retuned a signed acknowledgement to Pennsylvania. My understanding, and the Company's intention, is (and always was) that any legal protections arising from the handbook are governed by Pennsylvania law.

### Defendant Robert Saunders

24. Defendant Saunders was employed for one year and ten months by Numeric Analytics, a Pennsylvania-based company.

25. Defendant Saunders was recruited out of the Chadds Ford headquarters by James DeOrio. The recruitment efforts consisted of emails, including emails by Mr. Saunders into Pennsylvania, and telephone calls with Mr. DeOrio in Pennsylvania. All of the Company's recruitment efforts were undertaken from Pennsylvania.

26. Defendant Saunders executed a Confidentiality and Non-Solicitation Agreement with the Company, with a clause that provides for Pennsylvania law to govern. The Agreement was sent to Defendant Saunders by email from Pennsylvania, and after signing it he returned it by email to Pennsylvania. Had he not agreed to that provision, he would not have been hired.

27. Defendant Saunders also signed the following additional agreements: (1) an offer letter sent to him from Pennsylvania, listing the Chadds Ford address as the company's address, and (2) an acknowledgement of the employee handbook (accompanied by the handbook itself). Defendant Saunders received these agreements from Pennsylvania, signed them, and sent his signature pages back to Pennsylvania.

28. In the course of his employment, Defendant Saunders was a timekeeping employee for billing purposes. His time entries were entered remotely from his home, approximately each day, into a time keeping portal administered by Numeric Analytics in Chadds Ford. There, in Chadds Ford, his time was aggregated and billed to clients. The payments for his work matriculated to Numeric Analytics's account at PNC in Chadds Ford (at certain times payments would travel through Utah, per the terms of a line of credit held by the Company), or, prior to March 2014, to Meridian Bank in Paoli, Pennsylvania.

29. In the course of his daily work, Defendant Saunders relied heavily on email communications as is common for modern workers in the IT industry. Mr. Saunders used the following email account: robert.saunders@numericanalytics.com. This account is administered and controlled by Numeric Analytics from Chadds Ford in conjunction with its outside IT consultant, Keystone Information Technology, based and operating in Berwyn, Pennsylvania.

30. Defendant Saunders communicated with the Chadds Ford headquarters on average several times per month. Email communications with Chadds Ford personnel traveled

from his numericanalytics.com account to the Numeric Analytics server, which is located in Pennsylvania, thus such emails constitute reaching into Pennsylvania. Telephone contacts by Mr. Saunders also reached into Pennsylvania, as they were direct calls to the headquarters.

31.  Defendant Saunders was paid by direct deposit from Numeric Analytics's bank account at PNC Bank in Chadds Ford, Pennsylvania, or, prior to March 2014, at Meridian Bank in Paoli, Pennsylvania.

32.  Defendant Saunders routinely relied upon the Chadds Ford headquarters and other Pennsylvania contacts for his administrative, human resources, and payroll/benefits support. This included, without limitation:

- All general office support matters;
- All salary/payroll matters;
- Health insurance, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;
- Vision benefits, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;
- Dental benefits, organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;
- 401(k) Plan, organized by the Chadds Ford headquarters, and provided by Cornerstone Advisors in Allentown, Pennsylvania;

- Life insurance, long-term disability, and accidental death coverage, all organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Technical allowance (annual), cell phone/internet allowances, and gym benefits, all organized and paid out of the Chadds Ford headquarters.

33. Defendant Saunders received the protections of Pennsylvania law. When hired, he received the Company's employee handbook from Pennsylvania and retuned a signed acknowledgement to Pennsylvania. My understanding, and the Company's intention, is (and always was) that any legal protections arising from the handbook are governed by Pennsylvania law.

### Defendant Bernadette Sanchez

34. Defendant Sanchez was employed by Numeric Analytics, a Pennsylvania-based company, for a total of three years and two months over two periods. Her first employment with the Company lasted for one year and six months, from February 2012 to August 2013. Her second employment with the Company lasted for one year and nine months, from March 2014 to December 2015.

35. For her second and most recent employment with the Company, I hired Defendant Sanchez as the result of several communications that extended into Pennsylvania. Ms. Sanchez's return to the Company was unsolicited and occurred at her own initiative. On November 20, 2013, Ms. Sanchez emailed me unsolicited, in Pennsylvania, to request to speak with me for the purpose of expressing her desire to return to Numeric Analytics and request a job with the Company. She then telephoned me in Pennsylvania, and expressly asked for a job with Numeric Analytics. She also sent me additional emails about issues such as compensation and relocation

expenses, which were sent into Pennsylvania. Numeric Analytics paid Ms. Sanchez $15,000 in relocation expenses from its bank account in Pennsylvania.

36. Defendant Sanchez executed a Confidentiality and Non-Solicitation Agreement with the Company, with a clause that provides for Pennsylvania law to govern. The Agreement was sent to Defendant Sanchez by email from Pennsylvania, and after signing it she returned it by email to Pennsylvania. Had she not agreed to that provision, she would not have been hired.

37. Defendant Sanchez also signed the following additional agreements: (1) an offer letter sent to her from Pennsylvania, listing the Chadds Ford address as the company's address, and (2) an acknowledgement of the employee handbook (accompanied by the handbook itself). Defendant Sanchez received these agreements from Pennsylvania, signed them, and sent her signature pages back to Pennsylvania.

38. In the course of her employment, Defendant Sanchez was a timekeeping employee for billing purposes. Her time entries were entered remotely from her home, approximately each day, into a time keeping portal administered by Numeric Analytics in Chadds Ford. There, in Chadds Ford, her time was aggregated and billed to clients. The payments for her work matriculated to Numeric Analytics's account at PNC in Chadds Ford (at certain times payments would travel through Utah, per the term of a line of credit held by the Company), or, prior to March 2014, to Meridian Bank in Paoli, Pennsylvania.

39. In the course of her daily work, Defendant Sanchez relied heavily on email communications as is common for modern workers in the IT industry. Ms. Sanchez used the following email account: bernadette.sanchez@numericanalytics.com. This account is administered and controlled by Numeric Analytics from Chadds Ford in conjunction with its

outside IT consultant, Keystone Information Technology, based and operating in Berwyn, Pennsylvania.

40. Defendant Sanchez communicated with the Chadds Ford headquarters on average several times per month. Email communications with Chadds Ford personnel traveled from her numericanalytics.com account to the Numeric Analytics server, which is located in Pennsylvania, thus such emails constitute reaching into Pennsylvania. Telephone contacts by Ms. Sanchez also reached into Pennsylvania, as they were direct calls to the headquarters.

41. Defendant Sanchez was paid by direct deposit from Numeric Analytics's bank account at PNC Bank in Chadds Ford, Pennsylvania, or, prior to March 2014, at Meridian Bank in Paoli, Pennsylvania.

42. Defendant Sanchez actively collaborated with the Chadds Ford headquarters on several projects. Defendant Sanchez collaborated with me on the recruitment of additional employees to be stationed at Time Warner, as the needs at Time Warner were steadily growing. On review of my communications with Ms. Sanchez today, it is clear that Ms. Sanchez and I communicated on this matter from April 2015 through December 2015. We communicated on this matter numerous times per week.

43. Defendant Sanchez routinely relied upon the Chadds Ford headquarters and other Pennsylvania contacts for her administrative, human resources, and payroll/benefits support. This included, without limitation:

- All general office support matters;
- All salary/payroll matters;

- Health insurance, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Vision benefits, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Dental benefits, organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- 401(k) Plan, organized by the Chadds Ford headquarters, and provided by Cornerstone Advisors in Allentown, Pennsylvania;

- Life insurance, long-term disability, and accidental death coverage, all organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Technical allowance (annual), cell phone/internet allowances, and gym benefits, all organized and paid out of the Chadds Ford headquarters.

44. Defendant Sanchez received the protections of Pennsylvania law. When hired, she received the Company's employee handbook from Pennsylvania and retuned a signed acknowledgement to Pennsylvania. My understanding, and the Company's intention, is (and always was) that any legal protections arising from the handbook are governed by Pennsylvania law.

### Defendant Eliza Clement

45. Defendant Clement was employed for nine months by Numeric Analytics, a Pennsylvania-based company.

46. I recruited Defendant Clement. My recruitment efforts consisted of emails, including emails by Ms. Clement into Pennsylvania, and telephone calls with me in Pennsylvania. All of the Company's recruitment efforts were undertaken from Pennsylvania.

47. Defendant Clement executed a Confidentiality and Non-Solicitation Agreement with the Company, with a clause that provides for Pennsylvania law to govern. The Agreement was sent to Defendant Clement by email from Pennsylvania, and after signing it she returned it by email to Pennsylvania. Had she not agreed to that provision, she would not have been hired.

48. Defendant Clement also signed the following additional agreements: (1) an offer letter sent to her from Pennsylvania, listing the Chadds Ford address as the company's address, and (2) an acknowledgement of the employee handbook (accompanied by the handbook itself). Defendant Clement received these agreements from Pennsylvania, signed them, and sent her signature pages back to Pennsylvania.

49. In the course of her employment, Defendant Clement was a timekeeping employee for billing purposes. Her time entries were entered remotely from her home, approximately each day, into a time keeping portal administered by Numeric Analytics in Chadds Ford. There, in Chadds Ford, her time was aggregated and billed to clients. The payments for her work matriculated to Numeric Analytics's account at PNC in Chadds Ford (at certain times payments would travel through Utah, per the term of a line of credit held by the Company).

50.     In the course of her daily work, Defendant Clement relied heavily on email communications as is common for modern workers in the IT industry. Ms. Clement used the following email account: eliza.clement@numericanalytics.com. This account is administered and controlled by Numeric Analytics from Chadds Ford in conjunction with its outside IT consultant, Keystone Information Technology, based and operating in Berwyn, Pennsylvania.

51.     Defendant Clement communicated with the Chadds Ford headquarters on average several times per month. Email communications with Chadds Ford personnel traveled from her numericanalytics.com account to the Numeric Analytics server, which is located in Pennsylvania, thus such emails constitute reaching into Pennsylvania. Telephone contacts by Ms. Clement also reached into Pennsylvania, as they were direct calls to the headquarters.

52.     Defendant Clement was paid by direct deposit from Numeric Analytics's bank account at PNC Bank in Chadds Ford, Pennsylvania.

53.     Defendant Clement routinely relied upon the Chadds Ford headquarters and other Pennsylvania contacts for her administrative, human resources, and payroll/benefits support. This included, without limitation:

- All general office support matters;
- All salary/payroll matters;
- Health insurance, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;
- Vision benefits, organized by the Chadds Ford headquarters, and provided by Independence Blue Cross out of Philadelphia, Pennsylvania, through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Dental benefits, organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- 401(k) Plan, organized by the Chadds Ford headquarters, and provided by Cornerstone Advisors in Allentown, Pennsylvania;

- Life insurance, long-term disability, and accidental death coverage, all organized by the Chadds Ford headquarters, and provided through the Newtown Square, Pennsylvania brokerage firm of Biddle & Company;

- Technical allowance (annual), cell phone/internet allowances, and gym benefits, all organized and paid out of the Chadds Ford headquarters.

54.     Defendant Clement received the protections of Pennsylvania law. When hired, she received the Company's employee handbook from Pennsylvania and retuned a signed acknowledgement to Pennsylvania. My understanding, and the Company's intention, is (and always was) that any legal protections arising from the handbook are governed by Pennsylvania law.

### Numeric Analytics, LLC

55.     Numeric Analytics was founded in 2007 as a Pennsylvania LLC. Its headquarters is located at 5 Christy Drive, Suite 107, Chadds Ford, Pennsylvania. Its first employee, Steven Phillips, worked from the Chadds Ford headquarters.

56.     In subsequent years, Numeric Analytics evolved to a remote employee model that is common in its industry. However, the infrastructure always remained in Pennsylvania, as detailed below.

57. Numeric Analytics has two managers: myself and James Sunderhauf. Both of us work out of the Chadds Ford headquarters.

58. Several other individuals at the Chadds Ford headquarters perform work for Numeric Analytics. These include Sean Chen, James DeOrio, Laurel Dunlap, and Christina McCarthy. Ms. Chen oversees Numeric Analytics's administrative and human resources matters. Approximately 60% of Ms. Chen's time is devoted to Numeric Analytics.

59. Numeric Analytics's tax returns show, and have always shown, the Chadds Ford headquarters as the Company address.

60. Numeric Analytics's company treasury is maintained in Chadds Ford, at PNC Bank. Prior to March 2014, it was maintained in Paoli, Pennsylvania, at Meridian Bank. Each and every monetary transaction conducted by the Company, large or small, flows into or out of Chadds Ford.

61. Numeric Analytics's employees are primarily timekeepers whose work is billed in time increments. Time is entered into a portal administered in Chadds Ford. Time entries are aggregated and processed in Chadds Ford. Invoices are prepared and sent to clients from Chadds Ford. Payments for time worked matriculate to the Chadds Ford account with PNC Bank (at times via Utah due to the terms of a line of credit), or, prior to March 2014, to the Meridian Bank account in Paoli, Pennsylvania.

62. Numeric Analytics's computer servers are maintained in Chadds Ford. Computer applications used by its employees – *e.g.*, for time reporting and storing/sharing documents – are administered from Chadds Ford. The company email accounts utilized by employees in the course of their work – with numericanaltyics.com addresses – are controlled from the Chadds Ford office, sometimes in conjunction with outside consultants based in Berwyn, Pennsylvania.

63. Employees are paid from direct deposits sent from the Chadds Ford bank account with PNC Bank. Prior to March 2014, employees were paid by direct deposits sent from the Meridian Bank account in Paoli, Pennsylvania. Employee benefits are organized in the Chadds Ford office with the assistance of brokers based in Newtown Square, and many of the providers are based in (and provide their benefits from) Pennsylvania, such as Independence Blue Cross in Philadelphia for health and vision, and Cornerstone Advisors in Allentown for 401(k) benefits.

64. The contracts between Numeric Analytics and its various customers list the Chadds Ford headquarters, and no other address, as the address of Numeric Analytics. Furthermore, Numeric Analytics's standard form of contract explicitly calls for the contract to be governed by Pennsylvania law.

65. All hiring decisions for Numeric Analytics are (and at all times were) made or approved at the Chadds Ford headquarters. Payroll, administrative, and human resources functions are performed at the Chadds Ford headquarters.

66. The website for Numeric Analytics shows the Chadds Ford headquarters as the company address. This information was placed on the website by a Colorado-based employee tasked with website design. The employee selected and input the information on his own, without any instruction to do so by Numeric Analytics management or anyone else.

67. Defendants incorrectly claim that the Company is based in Colorado. In reality, the Company has no office in Colorado. For a period of time it had use of temporary space in Denver, so as to provide Denver-area employees with a conference room if needed. The space was never staffed – at all times, all Colorado employees worked from their homes. Space is no longer rented or maintained by the Company in Colorado. Currently, there are five Colorado employees out of a total of fifteen employees in the Company. All of the five Colorado

employees work from home. The Company has held occasional "summits" in Colorado because it is a central and desirable location; however, all of these summits have occurred at resorts or similar facilities, and none have ever occurred on, or in any way involved, a location controlled by the Company. As Company President working from her home in Denver, Defendant McCabe was often inclined to incorrectly suggest that the Company was based in her home state rather than in Pennsylvania. I believe this is the reason that some items under her control, such as certain business cards, reflected the unstaffed office address in Colorado. Defendant McCabe's assertion that there was a Denver "office with typically 11 or 12 employees" is false and misleading; there was never a staffed office and all Colorado employees have always worked from home.

THIS DECLARATION IS MADE IN ACCORDANCE WITH 28 U.S.C. SECTION 1746.

I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JANUARY 11, 2016.

*David Carpenter*