**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NUMERIC ANALYTICS, LLC,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 16-51** |
| **v.** | : | |
| | : | |
| **ANN MCCABE** *et al.*, | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                 **FEBRUARY 9, 2016**

**<u>MEMORANDUM</u>**

This case requires the Court to consider the limits of personal jurisdiction in the age of electronic commerce.  Traditionally, employees have generally worked in geographic proximity to their employer, often in a single location.  Today, the Internet enables a much more flexible set of business practices, at least in particular industries.  Businesses in some industries can depart from the traditional "brick and mortar" model and distribute their functions geographically.  Some staff can work in proximity to clients in various locations while administrative staff handle payroll in another and managers oversee the entire operation from still somewhere else.  Communication that used to happen in office conference rooms, cubicles, and around water coolers can now happen with a broad and growing range of digital communication services.  For some industries and some employees, this flexibility enables improved services and a more enjoyable daily life than the rigid nine-to-five office day of yesteryear.

Remote employment raises challenges that the law is now struggling to resolve.  One of these is the employer's ability to enforce employment agreements.  In a traditional business, an employer can bring a lawsuit to enforce an employment contract in the jurisdiction where the

1

business operates and employees both work and live.  There is no doubt that the court's personal jurisdiction over employees in these traditional cases is appropriate.  However, in a business with its operations and personnel widely distributed across state or even national boundaries, questions of jurisdiction can become significantly more complicated.  If an employer in one state has virtually all of its employees working in various other states, linked by advances in communications technology, does it comport with "traditional notions of fair play and substantial justice" to permit the employer to haul its remote employees into a distant court?  *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).  Courts have reached various conclusions in different cases.  *See, e.g., Baanyan Software Servs. Inc. v. Kuncha*, 81 A.3d 672 (N.J. Super. Ct. 2013) (finding no personal jurisdiction when a New Jersey company hired an Illinois employee who worked remotely for non-New Jersey clients); *Cossart v. United Excel Corp.*, 804 F.3d 13 (1st Cir. 2015) (finding court could take jurisdiction over an out-of-state employer because the employer reached into the state to hire a remote employee there).

In this case, Plaintiff claims that several former employees violated non-solicitation agreements by leaving Plaintiff's employ, starting a competing business, and poaching Plaintiff's clients.  Plaintiff asserts that it is a Pennsylvania company, founded in and operating from Chadds Ford, Pennsylvania.  It has filed a single lawsuit against five of its former employees in this District.  Plaintiff raises claims sounding in both contract and tort.  Preliminarily, Plaintiff asks this Court for a Temporary Restraining Order prohibiting Defendants from violating non-solicitation agreements they signed with Plaintiff.  Defendants counter with a Motion to Dismiss

Plaintiff's Complaint on the grounds that this Court does not have personal jurisdiction over the geographically far-flung Defendants.[1]

I held a hearing on these Motions, and the parties have presented testimony, documentary evidence, and supplemental briefing.  For the reasons that follow, I conclude that this Court has jurisdiction over some of Plaintiff's claims, and argument on Plaintiff's request for a Temporary Restraining Order has been scheduled.

## I.  Summary of the Allegations

Plaintiff, Numeric Analytics, LLC, is a web analytics and marketing consulting company. It is undisputed that it was originally established under Pennsylvania law and later re-organized under Delaware law.  It provides services to clients around the country, and its staff work remotely, either from home offices or in residence with a particular client.  A large proportion of its consultants lives and works in the area of Denver, Colorado, although Numeric Analytics has no permanent office space there.  Its principal place of business is 5 Christy Drive, Suite 107, Chadds Ford, Pennsylvania, 19317.  To the extent Numeric Analytics has a physical presence anywhere, it is there.  That presence consists mostly of computer servers and some minimal staff, though Plaintiff conceded at the hearing that virtually everyone working at the Chadds Ford office is technically on the payroll of a related company, Numeric Jobs, handling administrative tasks for Numeric Analytics by contract.

Defendants were all employees of Numeric Analytics.  Ann McCabe was President, and she is a resident of Colorado.  Kurt Schon was "Senior Consultant," and he is a resident in Ohio. Robert Saunders was "Practice Leader – Analytics and Optimization" and is a resident of Wisconsin.  Bernadette Sanchez was "Principal Consultant – Analytics and Optimization" and is

---

[1] Defendants' Motion also sought to dismiss the claims for lack of effective service.  This appears to have been resolved, and I dismiss that portion of Defendants' Motion without prejudice to their right to raise the issue again.

a resident of Virginia.  Finally, Eliza Clement was "Principal Consultant" and is also a resident of Virginia.  While still in Plaintiff's employ, all Defendants signed the Non-Solicitation Agreement that Plaintiff is attempting to enforce.

Plaintiff alleges that McCabe, Numeric Analytics' President, while still employed by the business, schemed to resign and start a competing company.  McCabe allegedly poached Schron, Saunders, Sanchez, and Clement to join her competing enterprise.  Plaintiff further claims that Defendants are now attempting to solicit the business of Plaintiff's clients, in particular the business of Time Warner, the client for whom Defendants Sanchez and Clement worked on-site.

Plaintiff brings five counts against Defendants in addition to a request for attorneys' fees. First, Plaintiff alleges McCabe breached her Non-Solicitation Agreement by hiring away Plaintiff's employees for McCabe's competing company.  Second, Plaintiff asserts all Defendants violated their Non-Solicitation Agreements by attempting to win over the business of Plaintiff's clients.  Third, Plaintiff claims all Defendants violated their common law duty of loyalty to Plaintiff by leaving Plaintiff's employ to start a competitor.  Fourth, Plaintiff asserts McCabe violated her fiduciary duty to Plaintiff as an officer of the company by leaving to start a competitor.  Finally, Plaintiff asserts a claim of tortious interference with contract against McCabe for causing Defendants Schron, Saunders, Sanchez, and Clement to violate their Non-Solicitation Agreements.  This Memorandum addresses only the question of jurisdiction.

## II.  Subject Matter Jurisdiction

I have subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.  The amount in controversy exceeds $75,000, and all parties are diverse.  Defendants are residents of Colorado, Ohio, Wisconsin, and Virginia.  The citizenship of Plaintiff, an LLC, depends on the

citizenship of its members, *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010), and Plaintiff's owners are citizens of Pennsylvania and New Jersey.

### III. Personal Jurisdiction

Defendants challenge this Court's power to take personal jurisdiction over Plaintiff's Complaint.  The crux of the argument is that Defendants' connections to Pennsylvania are too tenuous to support jurisdiction.  Defendants do not live in Pennsylvania, they did not physically work there, and many have never even been there for any work-related purpose.  In fact, their only connection to Pennsylvania is based on Plaintiff's assertions that the business is headquartered there, and Defendants strongly dispute the extent to which the business is really based in Chadds Ford, Pennsylvania.  According to Defendants, the notion that Numeric Analytics is based in Pennsylvania is little more than a fiction that Plaintiff is using to give itself the ability to haul its former employees into court in a highly inconvenient forum.

Federal District Courts may only exercise jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (citing *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998)); Fed. R. Civ. P. 4.  Pennsylvania's statute governing jurisdiction over non-resident defendants is "co-extensive with the permissible limits of due process," so I "need only decide whether it would be a denial of due process to hold [defendants] subject to suit in Pennsylvania." *Koenig v. International Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, AFL-CIO*, 426 A.2d 635, 640 (Pa. Super. Ct. 1980).  Under the Due Process Clause, "we ask whether, … the defendant[s] ha[ve] 'certain minimum contacts with … [Pennsylvania] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (citing *International Shoe*, 326 U.S. at 316).

Jurisdiction under the Due Process Clause may be "general" or "specific." *Id.* at 317. General jurisdiction over a defendant exists when a defendant's contacts are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). Plaintiff makes a feeble attempt to argue general jurisdiction, but concedes in its briefing that "[t]he cases that deal with remote employees primarily invoke specific jurisdiction." I have no hesitation in concluding that none of the Defendants have the kind of systematic and continuous contacts with Pennsylvania that would support general jurisdiction.

Turning to specific jurisdiction, the Third Circuit has explained:

The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Grimes v. Vitalink Commc'ns Corp.,* 17 F.3d 1553, 1559 (3d Cir.1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

*O'Connor*, 496 F.3d at 317. A Court should evaluate its jurisdiction claim-by-claim, and defendant-by-defendant. *Remick*, 238 F.3d at 255.

A. Jurisdiction over the Breach of Contract Claims

I first consider whether I may maintain personal jurisdiction over Defendants for Plaintiff's breach of contract claims. Plaintiff argues that Defendants "directed their activities" to Pennsylvania because Defendants signed employment contracts with a Pennsylvania company, continuously communicated with a Pennsylvania company about their employment,

6

ran all invoices for the work they performed through Pennsylvania, and were paid by their Pennsylvania employer.  These contacts, Plaintiff claims, satisfy minimum contacts for all Defendants.

Though I believe the question is close, I find that jurisdiction exists.  Each of these, by itself, might not be enough to confer jurisdiction.  It is settled law that "[t]he mere existence of a contract is insufficient to establish minimum contacts."  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008).   Similarly, the Third Circuit has found that "informational communications" such as isolated phone calls or letters are insufficient to satisfy jurisdiction. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products, Co.*, 75 F.3d 147, 152 (3d Cir. 1996).  However, "[i]n determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including … the parties' actual course of dealing." *Remick*, 238 F.3d at 256.  In this case, the back office personnel management (payroll processing, administering benefits programs) for Numeric Analytics occurred in Pennsylvania. Plaintiff presented testimony at the hearing that employees would need to contact the Pennsylvania office to resolve payroll, benefits, or other problems throughout the course of their employment.  Medical coverage, medical benefits, and retirement plans were administered from Pennsylvania.  Timekeeping, each employee's billing of customers, and email were managed by the Pennsylvania office. Plaintiff paid Defendants' salaries using a Pennsylvania bank.   In short, all of the essential functions that allowed Defendants to earn a living were channeled through Pennsylvania.  It bears mention that all of these links with Pennsylvania are characteristic of a traditional employer-employee relationship, except for location, underscoring that Defendants'' connection to the Commonwealth is more than incidental.

Plaintiff has also produced offer letters to each Defendant listing the Chadds Ford, Pennsylvania address.  Upon reading the offer letters, each of the defendants would understand they were establishing an ongoing employment relationship with a Pennsylvania company. Defendants also signed non-solicitation agreements that included Pennsylvania choice of law (albeit not choice of forum) provisions.  Although Defendants are correct that a forum selection clause would be the preferred method of resolving such ambiguity, *see SKF USA, Inc. v. Okkerse*, 992 F.Supp. 2d 432, 445 (E.D. Pa. 2014) (holding that a forum selection clause resolved a dispute over personal jurisdiction), I do not find the lack of such a clause dispositive. At a minimum, Defendants knew that Pennsylvania was the legal fulcrum for their contractual obligations.  I conclude that the combination of these contacts is enough to find that Defendants "purposefully directed" their activities into Pennsylvania.  As in *Remick*, "[t]hese facts as a whole involved more entangling contacts than the mere 'informational communication at issue in *Vetrotex*.' " 238 F.3d at 256; *see also Vizant Technologies, LLC v. Whitchurch*, 97 F.Supp.3d 618, 631 (E.D. Pa. 2015).

As to the second requirement for specific jurisdiction, the  breach of contract claims against all Defendants certainly "arise out of" and "relate to" Defendants' contacts with Pennsylvania. *O'Connor*, 496 F.3d at 317.

Finally, I conclude that maintaining jurisdiction over these contract claims does not "offend traditional notions of fair play and substantial justice."  *Id.* at 316–17.  When jurisdiction is otherwise constitutional, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).  Considerations include the "burden on the defendant" of litigating in a distant court and "the potential clash of the forum's law with the 'fundamental

substantive social policies' of another State.' " *Id.* The court must consider whether, taking into account all the circumstances of the case, exercising jurisdiction is fair. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Here, Defendants knew they were working for a Pennsylvania company. Given that the contracts at issue select Pennsylvania law as the governing standard, there is no concern over frustrating the policies of another state. I recognize that it imposes a burden on Defendants to litigate in Pennsylvania, but this burden weighs against Plaintiff's interest in litigating this case in a single forum. If I declined jurisdiction, Plaintiff would need to file the same Pennsylvania breach of contract claim in the jurisdiction where each Defendant resides. As described by the Supreme Court:

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute … the plaintiff's interest in obtaining convenient and effective relief, … [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies ….

*World-Wide Volkswagen Corp.*, 444 U.S. at 292.

I also note that the very business activities in which Defendants were engaged were spread across different states and involved travel, including travel for annual meetings of Numeric Analytics. In my view, the nature of the employment is highly relevant to the analysis of reasonableness.[2] The benefits that flow from e-commerce, such as not having to relocate to accept a position, and the flexibility of work-from-home employment can be tempered with corresponding obligations to the employer. I conclude that Defendants have not shown that jurisdiction would be so unreasonable or unfair that I should dismiss the case, and I will exercise personal jurisdiction over Defendants with respect to Plaintiff's breach of contract claims.

---

[2] By way of contrast, I would hesitate to say that a clerk at Walmart, whose employment is singularly tied to place, could be sued in Bentonville, Arkansas, even if her paycheck were processed there.

Case 2:16-cv-00051-GAM   Document 16   Filed 02/09/16   Page 10 of 14

B.  Jurisdiction over Claims for Breach of Loyalty and Breach of Fiduciary Duty

The personal jurisdiction analysis is claim specific, so my decision that I have jurisdiction to hear Plaintiff's contract claims does not determine the question of whether I have jurisdiction over other claims.  *Remick*, 238 F.3d at 255.  When evaluating specific personal jurisdiction over intentional torts, courts first apply the traditional test described above.  If jurisdiction cannot be satisfied under the traditional test, courts apply an analysis known as the *Calder* Effects Test. Under this test, a court may maintain jurisdiction if a plaintiff shows:

(1) The defendant committed an intentional tort;
(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007); *Vizant*, 97 F.Supp. 3d at 628 (explaining the *Calder* test applies if there is no jurisdiction under the traditional test).[3]

Plaintiff claims that all Defendants violated their duty of loyalty to Plaintiff, and that McCabe in addition violated her fiduciary duty as President of Numeric Analytics.  "By leaving Numeric Analytics, starting a competitive business, hiring away fellow Numeric Analytics

---

[3] There appears to be some uncertainty among district courts about precisely how the specialized *Calder* test relates to the traditional test for jurisdiction within the Third Circuit.  In *IMO Industries, Inc. v. Kiekert AG*, the Third Circuit applied the *Calder* test to a question of specific personal jurisdiction over an intentional tort.  155 F.3d 254, 259–60 (3d Cir. 1998).  Courts have reached different conclusions about whether the *Calder* test modifies or simply adds to the general test for specific jurisdiction.  In *Brown & Brown, Inc. v. Cola*, the court wrote, "[i]n the case of an intentional tort claim, the first and second factors are *replaced* by the 'effects' test." 745 F. Supp. 2d 588, 606 (E.D. Pa. 2010) (emphasis added).  But the court in *Vizant* explained that the *Calder* test applies *in addition* to the traditional test.  97 F. Supp. 3d at 628 ("In addition to this three-part test of specific jurisdiction, the Supreme Court has established a second analysis …. [T]he *Calder* test need only be invoked when a district court finds that a defendant lacks sufficient minimum contacts under the traditional test.").

I agree with the interpretation of *Vizant*.  In *IMO Industries*, the Third Circuit first noted that the defendant's contacts with the forum were not sufficient to justify jurisdiction, and then went on to consider the *Calder* test.  The *Calder* test for intentional torts, then, appears to complement rather than replace the general test.  *See also Smal and Partners UK Ltd. v. Podhurst Orseck P.A.*, 2012 WL 1108560 at *3 n.4 (D.N.J. 2012) (noting "Courts have used one, the other, or both tests to analyze a defendant's contacts.").

employees, and attempting to steal away Numeric Analytics customers, Defendants have grossly violated their duty of loyalty to Numeric Analytics as their employer."[4]  Compl. at ¶¶ 41, 45.

With the exception of Defendant McCabe, I do not find that Defendants' contacts with Pennsylvania are sufficient to support jurisdiction over these claims under the traditional test for jurisdiction.  "[W]hat is necessary is a deliberate targeting of the forum."  *O'Connor*, 496 F.3d at 317.  Plaintiffs allege that Defendants sought to hire individuals who were not Pennsylvania residents and solicited business of non-Pennsylvania companies.  Plaintiff argues that the injury was felt in Pennsylvania.  That is at least partly true, although several factors suggest that it is not so clear where the injury of the alleged torts was actually felt.  Only one of Plaintiff's owners lives in Pennsylvania; most of Plaintiff's work occurs outside of Pennsylvania; until very recently, for business reasons related to McCabe's Colorado residence, Plaintiff's website identified its address as a non-Pennsylvania address.  Plaintiff may have suffered financial injury in Pennsylvania, but it is far from clear that its reputational injuries would be centered there. *Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110 (6th Cir. 1994) (explaining that Ohio was not the center of an international athlete's professional reputation).  Furthermore, mere knowledge that an injury will be felt in a particular forum is decidedly not the same thing as deliberate targeting of that forum.  *See IMO Industries, Inc.*, 155 F.3d at 267–68.

The *Calder* test does not save jurisdiction over these defendants for the same reason: Defendants did not expressly aim their allegedly tortious conduct into Pennsylvania.  *Id.* (finding no personal jurisdiction over a German company for interfering with New Jersey company's effort to sell its Italian subsidiary to a French company even though the German company knew the plaintiff was a New Jersey Company because German company's conduct wasn't *aimed at*

---

[4] In Count IV, alleging a violation of fiduciary duty claim against Defendant McCabe, the words "Defendants have" are replaced with "Defendant McCabe has," and "their duty of loyalty to Numeric Analytics as their employer" is replaced with "her duty of loyalty to Numeric Analytics as an officer of the Company."

*New Jersey*); *Marten*, 499 F.3d at 297 (court needs to consider entire *Calder* test "[o]nly if the 'expressly aimed' element of the effects test is met").

As to Defendant McCabe, my conclusion is different.  By definition, the President of a company, as an officer, has both a fiduciary duty and a duty of loyalty to the company. *Seaboard Industries. Inc.  v. Monaco*, 442 Pa. 256, 276 A.2d 305 (1971). Regardless of its geographic reach, Numeric Analytics is a Pennsylvania company, both founded and headquartered here.  Its legal address of record with the Delaware Corporate Bureau is Chadds Ford.  Necessarily, a breach of fiduciary duty or duty of loyalty by the President of a company affects the viability and fortunes of that company and is felt wherever the principal place of business may be.  McCabe's duty as to this claim arises out of her status, not her conduct, and that status is inextricably bound to Pennsylvania, which is where Numeric Analytics, for corporate purposes, exists.  By accepting the responsibility of corporate officership, McCabe distinguished herself from regular employees and aimed her actions into her company's home state in a way that the regular employees did not.  McCabe cannot accept the mantle of corporate officership for a Pennsylvania-based business and then renounce any meaningful contacts with the state where it is headquartered.

Because the duty alleged is inherent to the role McCabe played as an officer of the entity, I do not doubt that "plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point" of the harm alleged.  *Marten*, 499 F.3d at 297.  Therefore, I will retain jurisdiction over Plaintiff's claims that Defendant McCabe violated her duty of loyalty and her fiduciary duty to the company.

12

C.  Jurisdiction over the Tortious Interference Claim Against McCabe

Finally, Plaintiff claims Defendant McCabe engaged in Tortious Interference by inducing the other Defendants to violate their employment contracts with Plaintiff.  The conduct in question would have emanated from Colorado, where McCabe is located, and reached into Ohio, Wisconsin, and Virginia, where the other Defendants reside.  Standing alone, under the *Calder* test, a serious question would exist as to whether these allegations would suffice to show that Pennsylvania was "targeted" simply because Numeric Analytics is located here.

Conceptually, however, my analysis of jurisdiction as to this claim is necessarily affected by McCabe's status as a corporate officer.  McCabe's violation of a duty of loyalty does not so much "reach into" Pennsylvania but rather can be said to arise **from** Pennsylvania because of her role as an officer.  If she has breached her fiduciary duty as an officer, the effects of the breach inexorably affect the corporation, which is centered here.  Similarly, if she has wrongfully induced employees to breach contracts with the corporation she represented, it was with certain knowledge that such effects would resound in Pennsylvania.  Given McCabe's specific responsibility toward the corporation, I am not persuaded that a pure *Calder* analysis controls. For a corporate officer to interfere with the company's contracts would necessarily implicate duties that separately exist by virtue of her fiduciary relationship with the entity.  The ultimate concern of the law of jurisdiction is the prospective defendant's contacts with the forum.  Rote application of *Calder* would fail to take into account the reality that a corporate officer necessarily has a meaningful connection to the jurisdiction where the corporation exists.

**IV. Conclusion**

For the foregoing reasons, I will grant Defendant's Motion to Dismiss as to the tort claims against all Defendants except for Defendant McCabe.  I will deny the Motion to Dismiss Plaintiff's breach of contract claims.

_____/s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Court Judge
